Filed 6/23/16  P. v. Husted CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D069904 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. RIF1203424) |
| MARK DAVID HUSTED, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Jeffrey J. Prevost, Judge.  Affirmed.

Richard de la Sota, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Andrew S. Mestman and Arlene A. Sevidal, Deputy Attorneys General, for Plaintiff and Respondent.

# I

## INTRODUCTION

Mark David Husted argues that that his convictions for aggravated sexual assault of a child and forcible lewd and lascivious conduct must be reversed because there is insufficient evidence of force or duress. Husted also contends that the trial court erred in failing to instruct the jury sua sponte on the crime of nonforcible lewd acts as lesser included offenses to the charged offenses of forcible lewd or lascivious conduct.

We conclude that substantial evidence supports the jury's verdicts, and further conclude that any instructional error was harmless. We therefore affirm the judgment.

# II

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Factual background*

1.    *The prosecution's case*

J.D. was born in August 1995. Her parents, W.H. and K.H., were married in 1995 and had two daughters together, J.D. and M.H.

In 2000, W.H. and Husted worked for a flooring company. W.H. was Husted's supervisor, and W.H. invited Husted to live with him, K.H. and their children in their home because W.H. believed that Husted was "down and out."

W.H. and K.H. began to have trouble in their marriage, in part due to Husted and K.H. growing close. W.H. eventually moved out, and at some point Husted moved in with K.H., J.D., and M.H.[1]

In 2002, when J.D. was six or seven years old, K.H., J.D., M.H., and Husted moved to an apartment complex in Riverside. While they were living there, K.H. worked, and Husted, who was unemployed, took care of J.D. and M.H. J.D. viewed Husted as a father figure and considered him to be "like a stepfather . . . back then[.]" J.D. "obey[ed] [Husted] because he was [her] stepdad."

J.D. testified to multiple instances of sexual abuse perpetrated against her by Husted during the time he was living with her, her mother, and her siblings. When she was between six and nine years old (between 2001 and 2004), while she, her sister, mother and Husted were living in an apartment complex, J.D. recalled an incident in which she and Husted were on the couch. She was on top of him. Husted and J.D. had intercourse and, after that, Husted pushed J.D.'s head down so that J.D. would orally copulate him. Husted instructed J.D., "Don't use your teeth."

J.D. remembered the intercourse as being "very painful." She "cried because it hurt, and then [Husted] would tell [her] that once [she] got older, it would feel better."

J.D. specifically recalled three instances at the apartment in which she and Husted had sexual intercourse on the couch. Each time she would orally copulate him afterward.

---

[1]    K.H. and Husted later had children together, including J.D.'s half brother, K.

Husted would push her head down to make her "do oral." J.D. would not resist because "[she] did what [she] was told to do. Any action, [she] just did it."

J.D. also remembered a time at the apartment when she, her sister M.H. (who was three or four years old at the time), and Husted were on the ground next to the couch at night. K.H. was in the back bedroom. While M.H. was asleep next to J.D., Husted orally copulated J.D. for the first time. J.D. specifically recalled being on her back with her legs spread.

J.D. also recounted an incident in which she either orally or manually copulated Husted until he ejaculated. J.D. specifically remembered that Husted told her, when he ejaculated, "These are your brothers and sisters."

In another incident, J.D. and Husted were in Husted's blue truck. They climbed into the back of the truck, Husted unzipped his pants, and J.D. orally copulated him.

J.D. also testified that when she was eight or nine years old, in 2003 or 2004, she, M.H., K.H., K., and Husted began living in different hotels. While they were staying at a particular hotel in Corona, J.D. and Husted took a shower together, and they had sex. Husted was sitting in the tub, and she straddled him. The door to the bathroom was closed, and the other family members were in the living area of the room.

J.D. did not tell her mother about the sexual abuse because Husted told her that "if [she] told [her] mom, it would make her jealous and ruin [Husted and K.H.'s] relationship." J.D. was concerned for her mother because she had already lost J.D.'s father, and J.D. did not want her mother to lose another romantic partner. As J.D. explained, she kept Husted's sexual abuse a secret between her and Husted because she

4

cared for her mother and did not want to be responsible for the break up of another of her mother's relationships.

When J.D. was between 10 and 13 years old, she began to learn about molestation and rape in school. She understood that what Husted did to her was wrong. J.D. told two classmates, K.B. and S.C., that Husted had molested her. K.B. testified that when she and J.D. were in the sixth grade, J.D. told K.B. and S.C. that her stepfather would take her into the shower, touch her, and do things to her.

J.D. testified that the last time she remembered Husted attempting to molest her, she and Husted were lying on the floor. Husted tried to touch J.D.'s leg. J.D. pushed him away and moved closer to the bed frame. Husted did not do anything else to J.D. on that occasion.

In 2005, K.H. lost custody of J.D. and M.H. to W.H. as a result of her drug use. The girls moved in with W.H. and his girlfriend K.D.

J.D. eventually disclosed to W.H. that Husted had sexually abused her. W.H. did not report the molestation to the police because he already had custody of the girls, he did not know where K.H. and Husted were living, and he felt that any threat Husted presented had been eliminated. W.H. believed that not reporting was the best choice for his family at the time.

Husted's molestation of J.D. came to police attention only after J.D. became sexually involved with M.A. when she was 13 years hold. M.A., who was six years older than J.D., worked for K.D.'s mother. During an investigation into M.A., investigators

5

asked J.D. how many men she had had sexual relations with.  J.D. responded that she had

had sex only with M.A. and Husted.

>       2.      *The defense case*

Husted testified in his own defense.  Husted contended that he never molested J.D.

He never thought that J.D. would say "something like this" about him, and he was

"disgusted" by the allegations.  Husted thought that he and J.D. were close; they never

had problems.

K.H. testified that she had seen J.D. and Husted in the shower together once, but

with the door open.  They had come in from the pool and were wearing bathing suits and

got into the shower just to rinse off.  K.H. also knew that J.D. and Husted had fallen

asleep together on the couch while watching a movie.  However, K.H. never saw Husted

acting inappropriately with either of the girls.

B.      *Procedural background*

The District Attorney of Riverside County charged Husted with five counts of

aggravated sexual assault by rape of a child under the age of 14 (Pen. Code, § 269, subd.

(a)(1);[2] counts 1-5); five counts of aggravated sexual assault by oral copulation of a child

under the age of 14 (§ 269, subd. (a)(4); counts 6-10); and 10 counts of lewd and

lascivious acts on a child under the age of 14 years by force, violence, duress, menace, or

fear (§ 288, subd. (b)(1); counts 11-20).  The lewd conduct counts were based on the

same acts underlying the aggravated sexual assault counts.

---

[2]      All further statutory references are to the Penal Code.

The case proceeded to trial. During trial, the court dismissed counts 5 and 20 pursuant to section 1385.

The jury found Husted guilty on counts 1, 2, 3, 6, 7, 8, 10, 11, 12, 13, 15, 16, 17, and 19. The jury acquitted him on counts 4, 9, 14, and 18.

The trial court sentenced Husted to a term of 60 years to life in state prison.[3]

III

DISCUSSION

A.    *Substantial evidence supports the jury's verdicts*

The jury convicted Husted of three counts of aggravated sexual assault of a child under 14 years of age in violation of section 269, subdivision (a)(1) (counts 1-3), four counts of aggravated sexual assault of a child under 14 years of age in violation of section 269, subdivision (a)(4) (counts 6-8, 10), and seven counts of forcible lewd conduct with a child (counts 11-13, 15, 16, 17, and 19), based on the same conduct underlying his convictions for the aggravated sexual assault counts.

Each offense for which Husted was convicted required the jury to find that he committed the unlawful act by use of "force, violence, duress, menace or fear of immediate and unlawful bodily injury on the victim or another person."  (§§ 288, subd. (b)(1), 269, subd. (a)(1) & (4).)  Husted argues that all of his convictions must be

---

[3]    Pursuant to section 654, the trial court imposed and stayed Husted's sentences as to counts 6-8, 11-13, 15-17, and 19.

reversed because there is insufficient evidence that he committed the acts by use of "force, violence, duress, menace or fear of immediate and unlawful bodily injury."[4]

1.     *Relevant legal standards*

"In reviewing a sufficiency of evidence claim, the reviewing court's role is a limited one. ' "The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]" ' [Citations.] [¶] ' "Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder." ' " (*People v. Smith* (2005) 37 Cal.4th 733, 738-739.)

2.     *Analysis*

A review of the record demonstrates that it contains sufficient evidence to support a finding that Husted committed the charged offenses by the use of duress.

---

[4]     Husted contends that his convictions for violating section 269, subdivision (a)(1) and (4) must be reversed entirely, and that his convictions for violating section 288, subdivision (b) should be reduced to convictions for violating section 288, subdivision (a), which does not require a finding of force, violence, duress, menace, or fear.

8

Duress, in the context of the sexual offenses at issue—i.e., aggravated sexual assault against a child and lewd acts—is " 'a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted.' "[5] (*People v. Cochran* (2002) 103 Cal.App.4th 8, 13 (*Cochran*) [duress as applicable to violations of §§ 269 & 288]; see also *People v. Leal* (2004) 33 Cal.4th 999, 1004-1005, 1010 [definition of duress with respect to lewd acts]; *People v. Senior* (1992) 3 Cal.App.4th 765, 774-775 (*Senior*) [definition of duress with respect to sexual penetration].) Duress, by its nature, "involves psychological coercion" of the victim. (*Senior*, at p. 775.)

Duress "can arise from various circumstances, including the relationship between the defendant and the victim and their relative ages and sizes." (*Senior*, *supra*, 3 Cal.App.4th at p. 775.) " 'Where the defendant is a family member and the victim is young, . . . the position of dominance and authority of the defendant and his continuous exploitation of the victim' is relevant to the existence of duress." (*Ibid.*, quoting *People v. Superior Court* (*Kneip*) (1990) 219 Cal.App.3d 235, 239.) Other relevant factors may " 'include threats to harm the victim, physically controlling the victim when the victim attempts to resist, and warnings to the victim that revealing the molestation would result in jeopardizing the family.' " (*People v. Veale* (2008) 160 Cal.App.4th 40, 46.)

---

[5] The jury was specifically instructed on this meaning of duress.

The fact that a victim testifies that the defendant did not use force or threats does not require a finding that no duress was present; rather, the victim's testimony must be considered in light of the victim's age at the time of the alleged conduct and the victim's relationship to the defendant. (*Cochran, supra,* 103 Cal.App.4th at pp. 13-14.) In *Cochran*, the defendant was convicted of multiple counts of aggravated sexual assault and forcible lewd conduct against his nine-year-old daughter, even though the victim had testified that she was not afraid of the defendant, and that he had not beaten or punished her, nor had he grabbed or forced her to participate in the charged acts. (*Id.* at pp. 11, 15.) In affirming the defendant's convictions, the Court of Appeal concluded that the sexual assaults were accomplished by duress because the victim "engaged in sex acts only in response to her father's parental and physical authority. Her compliance was derived from intimidation and the psychological control he exercised over her and was not the result of freely given consent." (*Id.* at pp. 15-16.) The court further noted that, although the existence of a parent/child relationship between the victim and his/her molester does not establish duress as a matter of law, "as a factual matter, when the victim is as young as this victim and is molested by her father in the family home, in all but the rarest cases duress will be present." (*Id.* at p. 16, fn. 6.)

This case is not one of those "rarest" of cases referred to in *Cochran*. Although J.D. never testified that she was afraid of Husted, that he threatened to punish her if she did not submit to his sexual advances, or that he grabbed her or forced her to engage in the sexual acts, there was abundant other evidence from which one could conclude that J.D. participated in sexual acts with Husted as a result of duress. J.D. was between seven

10

and nine years old when the abuse started. Husted was her de facto stepfather, in that she considered him to be "like a stepfather" to her, and she "obey[ed]" him as a result of what she viewed to be his role as her stepfather. In addition, at the time the abuse was occurring, Husted was the main caregiver for both girls—meaning that he was the primary person to whom J.D. looked to meet her daily needs.

In addition, J.D. testified that Husted specifically warned her that if she told anyone about the abuse, her disclosure would result in the fracturing of her mother's relationship with Husted. J.D. testified that she was afraid of causing the break up of another of her mother's relationships. Husted's warning to J.D. that revealing the molestation would result in her mother being hurt and losing her relationship with Husted, which would effectively bring an end to their "family" as J.D. experienced it at the time, is precisely the kind of factor that suggests the existence of duress in a sexual abuse case involving a parental figure.

Given the nature of the relationship between J.D. and Husted, together with J.D.'s young age, as well as Husted's warnings that if J.D. revealed the sexual abuse she would cause the break up of her mother's relationship with Husted, a reasonable fact finder could conclude that J.D. was particularly vulnerable to the psychological coercion that arises from the implicit threat of adverse consequences to a parent/child relationship. Thus, the evidence presented against Husted was sufficient to show that the sex offenses of which he was convicted were accomplished through the use of duress.

11

B.     *Any error in failing to instruct the jury on the lesser included offense of nonforcible lewd conduct was harmless*

Husted contends that the trial court committed reversible error in failing to instruct the jury, sua sponte, on the offense of nonforcible lewd conduct, in violation of section 288, subdivision (a), as a lesser included offense to the offenses charged in counts 11-19, forcible lewd conduct, in violation of section 288, subdivision (b)(1).  According to Husted, if the jury had been properly instructed with this lesser included offense with respect to counts 11-19, there is a reasonable probability that the jury would have declined to convict him of the offenses requiring force or duress in the counts on which he was convicted (counts 1, 2, 3, 6, 7, 8, 10, 11, 12, 13, 15, 16, 17, and 19) and, instead, would have convicted him of only the lesser offenses of nonforcible lewd conduct with respect to counts 11, 12, 13, 15, 16, 17, and 19.  We conclude that although the trial court should have instructed the jury on the lesser included offense of nonforcible lewd conduct in violation of section 288, subdivision (a), with respect to counts 11-19, the error did not prejudice Husted.

1.     *Additional background*

After the defense rested, the trial court and parties conferred off the record regarding jury instructions.  After going back on the record, the trial court asked the parties to recount some of the discussion that had been held off the record regarding what had been decided with respect to certain jury instructions, including the instructions related to the charges involving section 288, subdivision (b)(1).  In response, the prosecutor stated:

"I think we went back and forth whether the [section] 288[ subdivision] (a) is a lesser. People's position is no lesser should be given. It's either he did it or he did not. Defense is making a motion or asking for just simple assault in this case."

Immediately thereafter, the court asked defense counsel, "Were you asking for attempt also?" Defense counsel responded, "I'm not asking for an attempt. I'm asking for the lesser of the assault. I don't believe there was evidence to request the attempt." The court then said, "All right. I will give assault as a lesser included offense as to Counts 11 through 19 then." The court did not ask defense counsel about instructing on section 288, subdivision (a) as a lesser included offense of section 288, subdivision (b), and counsel did not request that instruction.

2. *Analysis*

" 'An offense is necessarily included in another if (1) the greater statutory offense cannot be committed without committing the lesser because all of the elements of the lesser offense are included in the elements of the greater; or (2) if the charging allegations of the accusatory pleading include language describing it in such a way that if committed in that manner the lesser offense must necessarily be committed.' " (*People v. King* (2010) 183 Cal.App.4th 1281, 1318-1319.) " ' "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence." ' " (*People v. Breverman* (1998) 19 Cal.4th 142, 154 (*Breverman*).) The trial court's obligation to instruct on the general principles of law relevant to the issues raised by the evidence includes a duty to instruct on a lesser included offense when the evidence raises a question as to whether all of the elements of

13

the charged offense are present and there is substantial evidence to support a conviction on the lesser included offense. (*Ibid.*) The corollary to this rule is that a trial court has no duty to give an instruction, even if requested, on a lesser included offense if there is not substantial evidence that could support a finding of guilt on that offense. (*People v. Bolden* (2002) 29 Cal.4th 515, 558.)

The People agree that the offense of nonforcible lewd conduct set forth in section 288, subdivision (a) is a lesser included offense of the offense of forcible lewd conduct as set forth in section 288, subdivision (b)(1). (See *People v. Ward* (1986) 188 Cal.App.3d 459, 472-473.) Husted contends that the court's failure to instruct on the lesser offense of section 288, subdivision (a) was error because, he maintains, there is substantial evidence that could support a finding of guilt on the lesser offense and not the greater.

As an initial matter, the People contend that Husted invited any error on the part of the trial court in failing to instruct the jury on section 288, subdivision (a). The trial court's "obligation to instruct on [such] offenses exists even when as a matter of trial tactics a defendant not only fails to request the instruction but expressly objects to its being given." (*Breverman*, *supra*, 19 Cal.4th at p. 154.) Invited error, however, may be found if counsel "expresses a deliberate tactical purpose in resisting or acceding to the complained-of instruction." (*People v. Valdez* (2004) 32 Cal.4th 73, 115.) The record does not support the People's contention. Specifically, the record does not reveal what was discussed between the attorneys and the court regarding the jury instructions during the in-chamber conference. Further, during the minimal on-the-record reflections concerning what had been discussed, defense counsel never requested that the court *not*

14

instruct the jury on section 288, subdivision (a). Defense counsel said nothing about instructions regarding that offense, and instead requested an instruction on the lesser included offense of simple assault. Although it is possible that defense counsel specifically requested that the court not instruct the jury with respect to section 288, subdivision (a) during the unreported conference regarding jury instructions, we have no way of knowing what did or did not occur during that off-the-record discussion.[6] The information that is available to us based on discussions that were held on the record does not indicate that defense counsel invited the court's error regarding the failure to instruct on section 288, subdivision (a).

The People next argue that the trial court did not err in failing to instruct the jury on section 288, subdivision (a), because there was not substantial evidence to support giving the instruction. We disagree. Although Husted's defense was that no sexual contact occurred, and not that sexual contact occurred but that it occurred without the use of force or duress, if the jury found that there was sexual contact, the jury had to then decide whether various factors, including J.D.'s age and her relationship with Husted, supported a finding that any sexual conduct between the two was the result of duress. Given that J.D. did not testify to any use of force on Husted's part, or to any direct threats

---

[6] We emphasize that unreported discussions regarding decisions to be made by the court during trial may make it very difficult for a reviewing court to be able to adequately address issues raised on appeal. For this reason, it is important for the trial court to ensure that discussions regarding significant trial events, such as the instructions that are to be provided to the jury, be on the record.

15

of force, violence, danger, hardship, or retribution, the evidence could have supported a finding that the lesser offense, and not the greater, had been committed.

However, we conclude that the trial court's failure to instruct the jury on the lesser included offense to counts 11-19—i.e., nonforcible lewd conduct—did not prejudice Husted. "[T]he failure to instruct sua sponte on a lesser included offense in a noncapital case is, at most, an error of California law alone, and is thus subject only to state standards of reversibility." (*Breverman*, *supra*, 19 Cal.4th at p. 165.) "[S]uch misdirection of the jury is not subject to reversal unless an examination of the entire record establishes a reasonable probability that the error affected the outcome." (*Ibid.*)

There is no reasonable probability that the trial court's error in failing to instruct the jury on the lesser included offense of nonforcible lewd conduct with respect to counts 11-19 affected the outcome of Husted's trial. J.D. described in detail each rape and each incident of oral copulation that formed the basis for the jury's convictions on counts 1, 2, 3, 6, 7, 8, 10, 11, 12, 13, 15, 16, 17, and 19. Husted's defense was not that he committed the acts, but without force or duress; rather, his defense was that he did not engage in sexual intercourse or oral copulation with J.D. at all. The jury clearly believed J.D. and not Husted with respect to these counts. Further, the circumstances under which these incidents occurred, including the fact that J.D. was between six and nine years old, Husted was essentially J.D.'s stepfather and her primary caregiver at the time, and Husted had warned her that any disclosure would, effectively, break apart her family, lead us to conclude that it is not reasonably probable that Husted would have received a more

16

favorable outcome on counts 11, 12, 13, 15, 16, 17, or 19 if the jury had been given the option of convicting Husted of committing lewd acts without force or duress.

Further, the jury determined the factual issue regarding Husted's use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury against him in its guilty verdicts on counts 1-3, 6-8, and 10. "[I]n some circumstances it is possible to determine that although an instruction on a lesser included offense was erroneously omitted, the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions. In such cases the issue should not be deemed to have been removed from the jury's consideration since it has been resolved in another context, and there can be no prejudice to the defendant since the evidence that would support a finding that only the lesser offense was committed has been rejected by the jury." (*People v. Sedeno* (1974) 10 Cal.3d 703, 721, overruled in *Breverman*, *supra*, 19 Cal.4th at pp. 164-165 [overruling *Sedeno* to the extent that an "erroneous omission of instructions on lesser included offenses . . . requires reversal unless 'the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions' "].) Although the jury's verdicts with respect to counts 1-3, 6-8, and 10 may "not *categorically* establish that the error [in failing to instruct on lesser included offenses as to other counts] was harmless," "it is clear that . . . a jury's determination on a factual issue under other instructions is relevant to determining whether an instructional error is harmless." (*People v. Campbell* (2015) 233 Cal.App.4th 148, 167.)

17

Counts 11-19 were based on the same conduct as that underlying the aggravated sexual assault counts, as to which Husted makes no claim of instructional error. Therefore, even if the jury had been instructed on the lesser included offense of nonforcible lewd conduct with respect to counts 11-19, the jury would still have had to make an "all or nothing" choice with respect to whether Husted committed aggravated sexual assault by rape and/or oral copulation as charged in counts 1-4 and 6-10. Given the fact that the jury found Husted guilty on counts 1-3, 6-8, and 10, all of which required a finding that Husted committed the offenses by the use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury, it is not reasonably probable that the jury would have concluded, in conflict with its findings with respect to counts 1-3, 6-8, and 10, that Husted did not use force, violence, duress, menace, or fear of immediate and unlawful bodily injury with respect to the lewd conduct counts alleged in counts 11-19. Nor is it reasonably probable that the jury would have found Husted guilty solely of the lesser offense of nonforcible lewd conduct as to counts 11, 12, 13, 15, 16, 17, and 19, and acquitted him of all of the aggravated sexual assault charges alleged in counts 1-4 and 6-10, as well as the forcible lewd conduct charges alleged in counts 11-19. In sum, the jury's determination of the factual issue regarding whether Husted used force, violence, duress, menace, or fear of immediate and unlawful bodily injury in committing counts 1-3, 6-8, and 10 supports our conclusion that it is not reasonably probable that Husted would have obtained a more favorable result if the jury had been instructed on the lesser included offense of nonforcible lewd conduct with respect to counts 11-19.

IV

DISPOSITION

The judgment is affirmed.

AARON, J.

WE CONCUR:


McDONALD, Acting P. J.


IRION, J.